# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| JANET NORTHRUP, as Chapter 7 Trustee for the Estate of Mountain Express Oil Company, et al., <br><br> *Plaintiff*, <br><br> v. <br><br> BARRY BIERENBAUM, GAIL BIERENBAUM, TAYLOR MERCANTILE, LLC, MONGO HOLDINGS, LLC, MONGO HOLDINGS BG INVESTMENTS, LLC, and 504N VENTURES, LLC, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00943-SEG |

**REPLY IN SUPPORT OF TRUSTEE'S MOTION FOR LEAVE TO AMEND**

## I.    INTRODUCTION

Defendants' Opposition mischaracterizes the Trustee's proposed amendments. Contrary to Defendants' assertions, the Trustee does <u>not</u> seek to assert "new theories" or "new claims." Rather, the Trustee seeks to take **already pleaded** facts and claims and add them to an existing Count. Specifically, the proposed amendment seeks to add to Count One—a Section 3304 claim—a claim under subpart (b) that Defendants acted "with actual intent to hinder, delay, or defraud creditors." DE 66-3 ¶ 164. Critically, the current Complaint already alleges just that: Defendants acted "with the actual intent to hinder, delay or defraud entities to which MEX was obligated." DE 1 ¶ 191. The proposed amendment then alleges badges of fraud supporting the 3304(b) claim, each of which is also already in the Complaint:

| Current Complaint (DE 1) | Proposed Amended Complaint At Paragraphs 164-65 |
|---|---|
| "Bierenbaums owned 98.46% of MEX" (*Id.* ¶ 2) | "Bierenbaums were insiders" |
| "MEX was insolvent at the time of the transaction" (*Id.* ¶¶ 2, 127-28, 163) | "MEX was insolvent at the time of the Transfers" |
| Transfers "were concealed from the vast majority of MEX's creditors" (*Id.* ¶ 118) | Transfers "were concealed from the vast majority of MEX's creditors" |
| Transfers were made "without MEX receiving reasonably equivalent value" (*Id.* ¶ 161) | "MEX received a lack of reasonably equivalent value" |
| "After the Term Loan was finalized, the Bierenbaums caused MEX to effectuate and close the LBO." (*Id.* ¶ 116; *see also* ¶¶ 47, 113-17, 123, 129) | "Transfers occurred shortly before or shortly after a substantial debt was incurred" |

1

Thus, the Trustee is not "injecting new theories"; she is simply seeking to add existing allegations to an existing Count.

The only other proposed amendments are to (1) respond to Defendants' *recent* claim that "insolvency" in the Complaint refers only to balance-sheet insolvency (even though no such limitation is contained within the Complaint) and (2) refer to an IRS notice issued after the Complaint was filed.[1] Nothing more.

Perhaps the clearest evidence that the Trustee is not seeking to inject anything new is the fact that Defendants have already sought and obtained discovery on these very topics. Among other things, Defendants have served discovery relating to (1) fraud and intent to hinder creditors; (2) cash-flow insolvency; and (3) the IRS's notices.[2] And even if the Trustee had not already responded to discovery on these topics, roughly **ten months** of discovery remain.

---

[1] The Trustee is not required to amend her Complaint to use this new evidence. Rather, the Trustee properly dealt with the IRS notice by identifying and producing it in discovery. *See* **Ex. A** (Second Amended Objections and Responses to Defendant's First Interrogatories) at 34 (disclosing IRS notice and citing Bates number). Since the Trustee is seeking leave, referring to the notice was appropriate.
[2] *See* **Ex. B** (Defendant Barry Bierenbaum's Second Interrogatories) at Nos. 10–12 (discovery about "false or misleading statements" Defendants made to banks and others); No. 20 (discovery about bills "MEX was unable to pay"); **Ex. C** (Defendant Barry Bierenbaum's First Interrogatories) at No. 1 (discovery about transfers); No. 2 (discovery about predicate creditors); No. 8 (concealment); **Ex. D** (Defendant Barry Bierenbaum's First Requests for Production of Documents) Nos. 6–8 (discovery re: predicate creditors); **Ex. E** (Defendant Barry Bierenbaum's Second Requests for Production of Documents) at Nos. 17–18 and 23–26 (relating to cash flow insolvency and non-payment of debts).

Stripped of the inaccurate claim that the Trustee seeks to "inject new legal theories," the Opposition boils down to two arguments. First, Defendants argue that the Trustee was not diligent in seeking leave. In so arguing, Defendants focus on the date that the Trustee learned of facts supporting her claims, which is not the correct date given that those facts are **already alleged in the Complaint**, *i.e.*, the Trustee was diligent in alleging them. Rather, the proper date upon which to judge diligence is the date the Trustee learned of her error in failing to cite Section 3304(b) in Count One. *See, e.g., Shuey v. Cnty. of Ventura*, 2016 WL 4367224, at *4 (C.D. Cal. Aug. 11, 2016) (finding good cause under Rule 16 when party "promptly moved for leave to amend after [it] discovered the error"); *infra* at 5–6 (citing cases). Here, the Trustee sought leave only ten days after learning of her error, showing diligence.

Second, Defendants argue futility. To succeed on that argument, Defendants must show "**beyond doubt**" that the Trustee cannot prove a set of facts which would entitle her to relief. *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001). As shown below, Defendants do not and cannot satisfy this high burden.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    The Trustee Applied the Correct Standard.

Defendants argue that the Trustee "misstates the legal standard" by relying on Rule 15 instead of Rule 16. But the Trustee's Motion states that it "is governed by Federal Rules of Civil Procedure 15 and 16" and that "[t]he Trustee satisfies [b]oth

3

Rules." *See* DE 66-1 at 9–23; *id.* at 14–15 (addressing Rule 16 factors).

Defendants also claim that the "preference for adjudication of claims on their merits" applies to Rule 15 but not Rule 16. DE 72 at 4. That is incorrect. The preference to resolve cases on the merits is not Rule specific. It is an overarching policy: "we have a strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible."[3] Consistent with that policy, courts consider the preference to resolve cases on the merits when deciding whether to grant leave under both Rules 15 and 16.[4]

### B.    The Trustee Was Diligent.

Much of the Opposition focuses on Defendants' claim that "[t]he Trustee has not shown diligence" because she "had the information to make the changes she now proposed before she filed her case, before the Court's amendment deadline [], and long before Defendants filed for summary judgment." DE 72 at 6. But that argument

---

[3] *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014); *Barrios v. CulturaLink,* 2025 WL 2816735, at *2 (N.D. Ga. Mar. 21, 2025) ("courts should keep in mind the Eleventh Circuit's 'strong policy of determining cases on their merits'.").

[4] *See, e.g., Barys ex rel. v. Vitas Healthcare*, 2007 WL 2310862, at *3 (S.D. Fla. June 24, 2007) (granting leave; "[o]ne of the central purposes of the Federal Rules [] 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.… I conclude that **Rule 16** is satisfied'."); *Roofing v. State Farm*, 2019 WL 10060392, at *2 (N.D. Ga. Nov. 19, 2019) (granting leave because the court "prefers to decide the case on the merits"); *Bucklew v. Derst Baking Co.*, 2024 WL 4773208, at *2 (D.S.C. Sept. 5, 2024) (Rule 16 "satisf[ied]" because of "Court's preference for matters to be resolved on their merits").

focuses on the wrong starting point. This is not a situation where the Trustee knew of facts and waited months past the amendment deadline before asserting them in her Complaint. Rather, the facts and claims at issue are already in the Complaint; the Trustee merely seeks to add them to another Count. DE 66 at 11, 14.

Specifically, the Trustee seeks to add to Count One an allegation that Defendants acted "with actual intent to hinder, delay, or defraud a creditor." DE 66-3 ¶ 164. That allegation is already in the Complaint. *See* DE 1 ¶ 191 (transfers made "with the actual intent to hinder, delay, or defraud entities to which MEX was obligated"). The proposed amendment then adds to Count One badges of fraud, including that "the Bierenbaums were insiders," "MEX was insolvent at the time of the Transfers," and that "MEX received a lack of reasonably equivalent value." DE 66-3 ¶¶ 164-65. As shown in the table on page 1, those allegations are also already in the Complaint. Thus, this is not a situation where the Trustee knew of facts or claims and failed to allege them. They have been in this case from the outset.

The context here is a simple mistake. In Count One, the Trustee alleged violations of Section 3304(a) but inadvertently omitted subpart (b), which addresses the already-pled allegation that Defendants caused MEX to hinder its creditors. *Id.* ¶ 164**.** Where, as here, a party seeks leave to cure a mistake, diligence is based on how long the party waited to cure the mistake after it was discovered. For example, in *Shuey*, 2016 WL 4367224, at *4, the Court found good cause under Rule 16 where

5

a party "promptly moved for leave to amend after [it] discovered the error." Likewise, in *Montezuma Welding & Radiator Works v. Auto-Owners Ins. Co.*, 2020 WL 4810688, at *3 (M.D. Ga. Feb. 6, 2020), leave was granted under Rule 16 where "[a]fter learning of the mistake, the Plaintiff acted with diligence." And in *Cross v. Surge Staffing, LLC*, 2019 U.S. Dist. LEXIS 192574, at *2 (S.D. W. Va. Nov. 6, 2019), "[t]he good cause standard [wa]s satisfied because the defendant acted diligently by requesting leave to amend as soon as the defendant discovered the inadvertent error."[5]

Here, the Trustee first learned of her mistaken failure to cite Section 3304(b) in Count One through the MPSJ. DE 66-1 at 15. The Trustee sought leave to amend only ten days after the MPSJ was filed, easily satisfying the diligence requirement.

Diligence is also satisfied as to the two clarifications the Trustee seeks to make (if diligence applies to those clarifications). First, the Complaint is already replete with allegations that MEX was insolvent when the transfers were made. DE 1 ¶ 2 ("MEX was insolvent at the time of the transaction"); *id.* ¶¶ 3, 49, 162, 163, 171,

---

[5] Numerous other cases are in accord. *See, e.g.*, *Cagle v. Tarlton Corp.*, 2017 U.S. Dist. LEXIS 67887, at *3 (E.D. Mo. May 4, 2017) ("Plaintiff has established good cause and diligence by filing this motion to amend the complaint shortly after discovery of the mistake"); *Arteaga v. UPS Inc.*, 2023 WL 2628688, at *3, (C.D. Cal. Jan. 23, 2023) (diligence satisfying "good cause" standard shown when leave sought six days after mistake discovered); *Grillot v. Oklahoma ex rel.*, 2019 WL 6898673, at *2 (W.D. Ok. Dec. 18, 2019) ("plaintiff moved for leave to amend less than three weeks after the motion to dismiss was filed" providing notice of error).

177 (same). During discovery conferrals **in September**, Defendants claimed that the Complaint's reference to "insolvency" only refers to balance-sheet insolvency and not cash flow insolvency. DE 66-1 at 4. Defendants claimed that the Complaint is so limited because the Trustee failed to allege that "MEX was cash-flow insolvent in the sense that it could not pay its bills as they became due." DE 72 at 9. That is incorrect. The Complaint already alleges that when the transfers at issue were made, MEX's "business operations were unable to sustain MEX's ongoing and future expenses," "MEX did not generate sufficient revenues from normal business operations to cover its ongoing obligations," and was incurring "debts beyond its ability to pay [them] as they became due." DE 1 ¶¶ 48–49, 65, 130, 209. Thus, the Complaint already alleges MEX was cash-flow insolvent so the diligence analysis does not apply; *i.e.*, the Trustee was diligent as she already alleged these facts. The Trustee simply wants to avoid any later claim by Defendants that they thought "insolvency" only meant balance-sheet insolvency. DE 66-3 at n.2.

With respect to the post-Complaint March 2025 IRS notice, the Trustee is not required to amend her Complaint to use this new evidence. Rather, the Complaint already alleges the IRS is a predicate creditor (*id.* ¶ 154) and the Trustee can rely on her production of the new notice in discovery. *Supra* n.1. Defendants' position that the Trustee is required to amend her Complaint each time she locates evidence she may use is without any legal support and would result in parties filing seriatim

7

amendments each time they identify evidence they may rely upon.

### C.     Defendants Offer No Response to the Trustee's Cases.

The Trustee cited numerous cases granting leave under Rule 16 based on the totality of the circumstances, particularly where the amendment does not cause prejudice.[6] DE 66-1 at 15–16. Defendants offer no response to these cases other than to argue that the "Court should reject the Trustee's alternative argument under this erroneous standard," though they cite no case holding it is erroneous or stating why.

### D.     Defendants Are Not Prejudiced.

Defendants fail to identify any prejudice they will suffer from the amendment other than to claim it is "an attempt to defeat the pending summary judgment motion."[7] DE 72 at 13. That is inaccurate. The Trustee seeks leave to correct an oversight. Regardless, "[t]he fact that a defendant will have to litigate the additional claims, (**and even potentially lose on the merits** of some of them) is not the type of prejudice encompassed in the Rule 15 inquiry." *Diversey, Inc. v. Pops Techs.*, 2019 WL 11003292, at *6 (N.D. Ga.  Nov. 13, 2019); *In re Palmer*, 615 B.R. 86, 93

---

[6] *See*, *e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 5632618, at *5 (N.D. Cal. Nov. 15, 2012) ("Courts have allowed amendments when the movant made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery.").

[7] *J&R Passmore, LLC v. Rice Drilling D,* 2024 WL 111661, at *2 (S.D. Ohio Jan. 10, 2024) ("amending a complaint to cure pleading deficiencies is 'entirely proper,' even if motions for summary judgment have already been briefed.")*; Rover Pipeline LLC v. Zwick*, 2021 WL 2665502, at *3 (S.D. Ohio June 29, 2021) (good cause under Rule 16 found when plaintiff sought leave after defendants raised issues in MSJ).

(Bankr. D. Md. 2020) (rejecting claim of prejudice because amendment "would cause him to lose the case on the merits").[8] Indeed, "the mere fact that [a claim] might have merit does not constitute 'prejudice' for purposes of Rule 15(a)." *Toledo v. CSX Transp.,* 2018 WL 1525073, at *5 (E.D. Tenn. Mar. 28, 2018).

Defendants' cited cases are distinguishable. In *Tolston v. City of Atlanta*, 723 F. Supp. 3d 1263 (N.D. Ga. 2024), the plaintiff sought to add a defendant "sixteen months after filing suit" even though he knew of the defendant's involvement "two years before he filed suit." *Id.* at 1286–90. That delay, and the fact that the claims against the new defendant would not relate back, drove the Court's decision. *Id.* at 1288–92. Likewise, in *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008), the plaintiff sought leave "seven weeks after the close of discovery" which if allowed would "cause[] the defendants undue prejudice, as they would not have been able to conduct further discovery with respect to the claim the proposed amendment asserted."[9] Those facts are materially different from the facts here, where the Trustee (i) seeks to add already pleaded allegations and claims to an already existing Count

---

[8] Defendants argue *Diversey* rejected one amendment because the plaintiff "wait[ed] four months" before seeking leave. That is inapposite: (1) the Trustee cites *Diversey* to show a merits loss is not prejudice and (2) the Trustee waited only ten days.

[9] Defendants also cite *Leathers v. State Farm*, 2012 WL 13014020 (N.D. Ga. Nov. 19, 2012). But in that case the plaintiff did not address the Rule 16 requirements and failed to explain why the amended allegations could not have been raised earlier. Here, the Trustee shows why the Rule 16 requirements are met and included the allegations in the Complaint (she is just seeking to add them to another Count).

and (ii) sought leave within ten days of learning of her error.[10] And neither case stands for the proposition that losing on the merits is the type of prejudice contemplated by Rules. On the contrary, leave is "granted with 'extreme liberality'" precisely "because cases should be decided on the merits." *Bank of Am., N.A. v. Stark*, 2025 WL 3124012, at *5 (N.D. Ga. Sept. 15, 2025).

### E.    The Proposed Amendments Are Not Futile.

Defendants argue the proposed amendments are futile. To succeed on that argument, Defendants must show "**beyond doubt**" that the Trustee cannot prove a set of facts which would entitle her to relief. *Bryant*, 252 F.3d at 1164. Defendants have not satisfied that burden for several independent reasons.

*First*, Defendants argue that the Trustee "cannot stand in the IRS's shoes to bring an FDCPA claim." DE 72 at 17. But in *In re Webster*, 629 B.R. 654, 674–75 (Bankr. N.D. Ga. 2021), a court in this District specifically rejected the cases cited by Defendants and instead held that a "Trustee may use § 544 [] to apply the provisions of the FDCPA to this case" and allow the Trustee to have "standing [that] is derivative of the IRS." 629 B.R. 654, 674–75, 680 (adopting the "majority line of

---

[10] In a footnote, Defendants cite *Dilmar Oil Co.* for the proposition that carelessness is not compatible with diligence. But that out-of-Circuit dicta involved a case where the plaintiff "chose not to assert [] claims [against a new defendant] until discovery had closed, and the case was set for trial." *Id.* at 981. And the proposed amendments changed the case from one about "Dilmar's insurance claims against Federated" to one about "statutory claims against DHEC," which would "require the court to continue the trial and reopen discovery. *Id.* That is not remotely like this case.

cases reject[ing] *Mirant's* and *MC Asset Recovery's* conclusion that the FDCPA itself prohibits its use in the bankruptcy context"). That holding is consistent with "[m]ost courts [which] have held that section 544(b) allows the trustee to step into the shoes of the IRS and enjoy the ten-year statute of limitations." *In re HVI Cat Canyon,* 658 B.R. 558, 581 (C.D. Cal. Bankr. 2024).[11] While Defendants cite a case purporting holding otherwise, that purported conflict does not show "beyond doubt" that the Trustee's claims are futile; rather, it warrants further merits briefing.[12]

**Second**, Defendants argue the proposed amendment "does not satisfy Rule 9(b)'s heightened pleading standard for fraud-based claims." DE 72 at 16. But there is a split as to whether Rule 9(b) applies. *See, e.g., Nesco, Inc. v.* Cisco, 2005 WL 2493353, at *3 (S.D. Ga. Oct. 7, 2005) (holding 9(b) inapplicable). Even assuming it applies, Defendants' argument ignores how fraudulent transfers are alleged. "Intent to hinder, delay, or defraud creditors is ordinarily established by circumstantial evidence." *In re Southern Home & Ranch Supply, Inc.*, 515 B.R. 699, 705 (Bankr. N.D. Ga. 2014). "In that regard, courts consider the existence of certain 'badges of fraud,'" such as whether (i) "the transfer was to an insider;" (ii) "[t]he

---

[11] *See also In re Gaither*, 595 B.R. 201, 208 (Bankr. D. S.C. 2018) ("544(b) does permit a trustee to step into the shoes of the IRS"); *In re Kipnis*, 555 B.R. 877, 883 (Bankr. S.D. Fla. 2016) (544(b) allows "Trustee…to step into the shoes of the IRS").
[12] *Moncibaiz v. Pfizer*, 532 F. Supp. 3d 452, 463 (S.D. Tex. 2021) ("complicated legal issues mak[e] it quite tenuous to conclude…amendment would [] be futile"); *Susca, Inc. v. Burlington*, 2025 WL 1283995, at *6 (E.D. La. May 2, 2025) (same).

transfer was disclosed or concealed;" (iii) "[t]he debtor was insolvent or became insolvent shortly after the transfer was made," (iv) "[t]he transfer occurred shortly before or shortly after a substantial debt was incurred; and (v) the transferor received "reasonably equivalent value" for the asset transferred. *Id.* Critically, **"[a]s long as the parties plead one or more of the badges of fraud [], they have pled the intent element with the requisite degree of particularity**." *Kipperman v. Onex Corp.*, 2007 WL 2872463, at *9 (N.D. Ga. Sept. 26, 2007).

Here, the proposed amendment explicitly discusses the "badges of fraud," including alleging that the transfer was to the Bierenbaums, *i.e.*, "insiders of MEX." DE 66-2 ¶¶ 164–65. "This first badge of fraud, a transfer to an insider, is one of the most important." *Kipperman*, 2007 WL 2872463, at *9. The proposed amendment also alleges other badges of fraud, including "MEX was insolvent at the time of the Transfers," that they "were concealed from a vast majority of MEX's creditors," and they "occurred shortly before or shortly after a substantial debt was incurred." *Id.* Thus, the proposed amendment "ple[a]d[s] the intent element with the requisite degree of particularity." *Kipperman*, 2007 WL 2872463, at *9.

Moreover, the Trustee alleges facts supporting each badge. For example: (i) to show the transfer was to an insider, the Trustee alleges the Bierenbaums owned 98.46% of MEX and were officers/directors; (ii) to show concealment, the Trustee cites testimony that the LBO "was 'a private agreement'"; (iii) to show insolvency

and lack of reasonably equivalent value, the Trustee discusses MEX's financials; and (iv) to show the transfer was before MEX incurred debt, the Trustee discusses the Term Loan effectuated before the Transfers. *Id.* ¶¶ 2, 10, 12, 31, 113, 118, 127–33. Further, the Trustee alleged that MEX was partly operated as a Ponzi scheme (¶¶ 66, 165), which is sufficient standing alone to allege fraud with particularity.[13]

The same is true for the Distributions. DE 66-2 ¶¶ 141–42. For these claims, the Complaint need only include: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer." *In re Beaulieu Grp.,* 2021 WL 4469928, at *34 (Bankr. N.D. Ga. Sept. 29, 2021). The Complaint satisfies that standard. DE 66-2 ¶ 142, Exhs. A–C.

***Third***, Defendants argue that MEX's lenders (who are only some of MEX's creditors) were aware of some of the transactions at issue. This argument also misapprehends the law. The Trustee need only show that there "was at least one unsecured creditor" who lacked knowledge of the transfer. *See In re LSC Wind Down, LLC,* 610 B.R. 779, 785–86 (Bankr. D. Del. 2020). Specifically, "the period for the trustee [begins] to run when the *last* creditor could reasonably have

---

[13] *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011) (presuming fraudulent intent where plaintiff alleges Ponzi scheme); *In re Canyon Sys. Corp.,* 343 B.R. 615, 636–37 (Bankr. S.D. Ohio 2006) ("actual intent to hinder, delay or defraud may be established as a matter of law in cases in which the debtor runs a Ponzi scheme").

discovered the fraudulent nature of a particular transfer."[14] Thus, that Defendants claim that some creditors (*i.e.*, the banks) knew of the transfers is unavailing.

***Fourth***, Defendants argue that the Trustee cannot add a claim for cash-flow insolvency because she "must allege facts to show that MEX could not pay its bills as they became due." But the Complaint already alleges that when the transfers were made MEX's "business operations were unable to sustain MEX's ongoing and future expenses," "MEX did not generate sufficient revenues from normal business operations to cover its ongoing obligations," and was incurring "debts beyond its ability to pay [them] as they became due." DE 1 ¶¶ 48, 65, 209; *supra* at 7.

Moreover, while Defendants make much ado of their claim that MEX paid its debts as they became due, they ignore the fact that the Trustee has alleged that MEX operated, at least in part, as a Ponzi scheme, which operates by taking in new money to pay existing debts. The fact that MEX used a Ponzi scheme to pay its debts does not mean it was cash-flow solvent. Rather, "a Ponzi scheme is insolvent ab initio."[15]

Further, this allegation is not conclusory but rather supported by Affidavits of

---

[14] *In re Maui Indus. Loan & Fin. Co.*, 454 B.R. 133, 138 (Bankr. D. Haw. 2011); *see also Post-Confirmation Comm. for Small Loans, Inc. v. Martin, No.* 2016 WL 1274127, at *8 (M.D. Ga. Mar. 31, 2016) ("Court must take into consideration whether **all** creditors" could discover the fraudulent transactions).

[15] *Nohr v. Jang*, 2017 WL 11627872, at *1 (N.D. Ga. Mar. 2, 2017); *In re Pearlman*, 472 B.R. 115, 125 (Bankr. M.D. Fla. 2012) (insolvency sufficiently pled by alleging a Ponzi scheme); *Wiand v. Lee*, 753 F.3d 1194, 1200–01 (11th Cir. 2014) ("Since Ponzi schemes do not generate profits sufficient to provide their promised returns, but rather use investor money to pay returns, they are insolvent.").

two of MEX's former CFOs who detail the Ponzi scheme and how "MEX was operationally insolvent from 2018 through 2021." DE 29 ¶ 25; DE 28 ¶ 25. Defendants' only response is to argue that "the Trustee did not incorporate or reference the affidavits in her proposed amendment." DE at 72 at 23. But the proposed amendment says "the Affidavits of Vic Lacy and John Scott [] at Docket Entries 28 and 29, [] **are incorporated by reference herein**." DE 66-2 ¶ 165.

The remainder of the Opposition raises purported (and disputed) facts about whether MEX was partly operated as a Ponzi scheme.[16] Such factual disputes do not show "beyond doubt" that the Trustee has failed to state a claim and ignore that "[f]or purposes of [a] motion to amend, the Court must accept as true all well-pleaded allegations in the proposed amend[ment]." *Auxilium v. Watson Laboratories*, 2013 WL 5503209, at *1 (D.N.J. Oct. 2, 2013).

***Finally***, when considering all issues, it should not be forgotten that the Trustee is not acting for herself, but rather to help innocent creditors who lost hundreds of millions of dollars. *See In re Roberts*, 659 B.R. 271, 286 (Bankr. W.D. Pa. 2024) (courts should try not to "depriv[e] innocent creditors of potential recoveries.").

---

[16] Defendants note MEX failed three years after the $99.5 million payout. While irrelevant to the Motion, the Trustee briefly responds to this false narrative. To effectuate their $99.5 million payout, the Bierenbaums implemented the Ponzi sale-leaseback scheme described in the Complaint and Lacy/Scott Affidavits. While MEX continued to operate after the Bierenbaums received their payout, that was because MEX's new owners continued the scheme the Bierenbaums started. Once MEX could not engage in the sale-leaseback transactions, MEX collapsed.

15

This 12th day of November, 2025.

/s/ *Steven J. Rosenwasser*
Steven J. Rosenwasser
Georgia Bar No. 614908
John D. Elrod
Georgia Bar No. 244604
William E. Eye
Georgia Bar No. 688914

**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NE
Terminus 200, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Fax: (678) 553-2212
Steven.Rosenwasser@gtlaw.com
ElrodJ@gtlaw.com
Eyew@gtlaw.com

*Counsel for the Plaintiff Janet Northrup, as Chapter 7 Trustee*

16

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

I hereby certify that the text of this document has been prepared in Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).  Further, I hereby certify that I have this day filed the foregoing **Reply in Support of Trustee's Motion for Leave to Amend** using the Court's CM/ECF system which will automatically send electronic notification to all attorneys of record.

This 12th day of November, 2025.

/s/ *Steven J. Rosenwasser*
Steven J. Rosenwasser
GA Bar No. 614908